IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

CURTIS CURRY                                                                                           PLAINTIFF

v.                                                               CIVIL ACTION NO.: 2:11-CV-00195-SA-SAA

HOLLYWOOD CASINO CORPORATION                                                    DEFENDANT

## MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Summary Judgment [34]. For the reasons set forth in this opinion, that motion shall be GRANTED, in part, and DENIED, in part.

## FACTUAL BACKGROUND

The undisputed and pertinent facts are as follows. The African-American Plaintiff, Curtis Curry, began employment with Hollywood Casino in November 2009. Specifically, Curry was employed as a part-time server in the Hollywood Casino diner. While employed at the diner, Curry worked under the authority of the director of hospitality, Odran Campbell. In April 2010, Hollywood began an investigation into the diner in an attempt to ameliorate financial, service, and theft issues. During the course of that investigation, the Hollywood surveillance department became suspicious of a number of Plaintiff's actions. Specifically, according to Hollywood, the investigative summary indicated that there was reason to believe that on a number of occasions Plaintiff had not paid for food which he received and had also allowed guests to leave without payment. Around that same time, in May 2010, Curry and his fellow employees at the Hollywood diner were informed that the casino planned to close the diner, necessitating a scale-down in the workforce. Although Plaintiff was not formally terminated, Curry understood that he was being taken off of the work schedule indefinitely. Curry received no working hours at the casino after May 2010.

In June of 2010, Plaintiff allegedly learned that a handful of former diner employees had been given alternative placements in other departments of the casino. Plaintiff therefore contacted his former supervisors to inquire about whether he too would be able to return to the active work schedule. However, Plaintiff failed to achieve placement elsewhere in the casino, and he subsequently filed a complaint with the Equal Employment Opportunity Commission (EEOC) on June 28, 2010, alleging that he was being discriminated against in violation of Title VII. In that charge, Curry stated, "On May 12, 2010, I was taken off the work schedule indefinitely and told by Abby Justice and James McBride that I would by contacted when they [found] the area that I would be working in." Curry stated that he believed he was the subject of discrimination because three younger African-Americans had received working hours after the initial downgrade in staffing. Thus, according to Curry's charge, he believed the casino's refusal to place him back on the schedule constituted discrimination on the basis of his race, sex, and national origin.

Then, on August 17, 2010, Plaintiff allegedly learned that the casino had released a number of employees from the dining buffet area. In an attempt to find out whether the potential openings would provide him an avenue back to the active work schedule, Curry contacted his former supervisors. On August 18, 2010, Curry sat down with Hollywood Casino vice president of human resources Andrea Sueing to discuss why he had not received any work hours since May 13, 2010.[1] According to Curry, Sueing informed him at that meeting that the fact that he had filed a charge with the EEOC rendered him unemployable. According to Curry, Sueing inquired whether Curry had filed a complaint with the EEOC, and, upon receiving confirmation, then stated, "Well, I've just got to tell you, now that you have filed a complaint, it makes—we

---

[1] Although Curry's EEOC charge reflects that he was told on May 12, 2010, that he was being removed from the schedule indefinitely, Suieng's affidavit indicates that Curry's last day of work was May 13, 2010.

cannot employ you at this moment because—because you have filed a litigation." Plaintiff alleges that he then asked, "so you're saying I can't work because I filed an EEOC complaint?" According to Curry, Sueing answered that final query in the affirmative, prompting him to lodge yet another complaint with the EEOC on September 1, 2010.

In that later charge, Plaintiff averred, "[o]n June 28, 2010, I filed a charge of discrimination…[and was later informed]…that because of my filing an EEOC complaint against the company that I would not be able to work at Hollywood Property." Thus, Curry alleged that he had been "retaliated against and denied employment in retaliation for filing a discrimination complaint in violation of Title VII." Plaintiff filed an action in this Court averring liability on the part of the Defendant for retaliation under 28 U.S.C. § 1981 and Title VII of the Civil Rights Act. Defendant subsequently moved this Court for summary judgment.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

---

[2] Defendant's Reply Memorandum in Support of its Motion for Summary Judgment requests that the Court deem a number of facts admitted based on Plaintiff's failure to rebut Defendant's Statement of Material Facts with citations to the record in his immediate response to that Statement of Material Facts. Defendant requests that such relief be granted under Federal Rule of Civil Procedure 56(e). Although 56(e) allows the Court to deem unaddressed facts as undisputed, the Court finds that Plaintiff has addressed those contentions in Curry's Response to the Motion for Summary Judgment. The Court declines to exercise such action under the present circumstances.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION

*Discriminatory Retaliation*

Defendant has filed a motion for summary judgment, alleging that Curry's claims for retaliation, under either Title VII or Section 1981, are due to fail. Both Title VII and § 1981 retaliation claims are governed by the same rubric, and the Court analyzes them conjunctively. Jones v. Robinson Property Grp., Ltd., 427 F.3d 987, 992 (5th Cir. 2005) (citing Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002)); Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n. 8 (5th Cir. 2003) ("Retaliation claims under § 1981 and Title VII…are parallel causes of action. Each requires proof of the same elements in order to establish liability.")).

4

Specifically, Defendant contends that Curry cannot establish a causal connection between his filing of an EEOC charge and any adverse employment action. Curry, on the other hand, argues that he has direct evidence of wrongful retaliation, resulting in three separate adverse employment actions. According to Curry:

> Andrea Sueing testified that she was the person who made the decision to *take Curry off the Schedule*. Sueing also testified that she was the person who *made the decision to terminate Curry's employment*. Curry has testified that Sueing told him that the reason Defendant *could not put him back on the schedule* was because he filed an EEOC charge.

(emphasis added). Thus, in the eyes of Plaintiff, there are three separate employment actions at issue: 1) the decision to remove Curry from the work schedule indefinitely; 2) the decision not to add Curry back to the work schedule; and 3) the decision to formally terminate Curry. Moreover, Curry contends that Sueing's revelation that Curry would not be placed back on the schedule constitutes direct evidence that the adverse employment decisions were motivated by a discriminatory animus. The Court takes up the proffered instances of alleged adverse employment actions in turn.

*Indefinite Removal from the Work Schedule*

The first potential adverse employment action at issue is that of removing Curry from the work schedule. It is undisputed that on May 12, 2010, Curry was informed that he would be removed from the work schedule indefinitely. Likewise, the uncontroverted evidence of record conclusively establishes that May 13, 2010 was the last day that Curry actually received working hours at Hollywood. Curry, however, did not file a charge of discrimination with the EEOC until June 28, 2010, and Defendant thus logically argues that an adverse employment action occurring before Plaintiff's exercise of protected activity cannot give rise to a retaliation claim.

In order to establish a prima facie case of retaliation, plaintiff must show: 1) that he engaged in protected activity, 2) that he suffered an adverse employment action, and 3) that a causal connection exists between the protected activity and adverse employment action. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). The Court agrees with Defendant, and finds Curry's reliance on the May 12 removal from the schedule misplaced.

An adversary employment action occurring before the employee engages in protected activity cannot provide the basis for a claim that the employer disciplined the employee for exercising his or her protected rights. See Chaney v. New Orleans Pub. Facility Mgmt, Inc., 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."); Yancy v. U.S. Airways, 469 F. App'x 339, 344 (5th Cir. 2012) (discounting alleged incident of discriminatory conduct occurring before the filing of a complaint). Plaintiff's attempt to obfuscate the issue by hailing back to Curry's remote exercises of protected activity in the past is equally without merit. In an argument that is strained from its conception, Curry attempts to establish that his supervisor Campbell had also supervised him at a former place of employment and was thus aware that he had previously filed a complaint with the EEOC while under the employ of that former casino. Thus, according to Curry, Hollywood's decision to remove him from the schedule could have simply been in retaliation for previously filing charges with the EEOC.

First of all, this assertion is far too vague to provide the basis for a genuine dispute of material fact as Curry provides no dates for the previous charges or any indication that such knowledge was relied upon by Hollywood. Little, 37 F.3d at 1076 (holding that a dispute of material fact is not created by metaphysical doubt, conclusory allegations, or unsubstantiated

6

assertions.). Furthermore, as a simple matter of necessity, any complaint initiated in connection with employment at that previous casino would have been far too tenuous to provide a sound basis for causation. According to Curry's own exhibit, he left the employment of that previous entity in November 2008, approximately 18 months prior to the relevant adverse action. Temporal proximity, without more, demands a more exacting causal connection. See Clark Cnty. School Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (citing, with approval, cases finding three-and-four-month periods between protected activity and adverse employment action failed to establish prima facie case under Title VII based on temporal proximity); Raggs, 278 F.3d at 471-72 (holding five-month lapse precluded inference of causal link from temporal proximity). Thus, any reliance on the May 12 removal from the Hollywood work schedule is incapable of supporting Curry's retaliation claim.

*Refusal to Grant Work Hours*

The next potential adversary employment action upon which Curry attempts to hang his retaliation claim is that of refusing to add Curry back to the work schedule.[3] Specifically, Curry relies on an August 18 conversation with Andrea Sueing to support that retaliation claim. He contends that he approached his supervisor and inquired whether recent vacancies within the food and beverage department would allow him to regain any scheduled work hours. Sueing,

---

[3] According to Defendant, the "decision" to not add Curry back to the schedule was not a decision at all. Rather, according to Hollywood, the closing of the diner dissolved Curry's position and only full-time employees were given the opportunity to apply for other positions. Nonetheless, it is undisputed that Curry was not formally terminated upon the closing of the diner and that there was a brief shortage of hourly workers in the food and beverage department following Curry's complete reduction of hours. Furthermore, while the closure of the diner might have provided Hollywood a legitimate, non-discriminatory reason capable of justifying an adverse employment action, the Court fails to see how such a factor should be incorporated into the inquiry as to whether an adverse employment action occurred. The test for an adverse employment action in the retaliation context is simply whether the employer's conduct "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Bustillos v. Miss. Valley State Univ., 2013 U.S. Dist. LEXIS 3369, *13 (N.D. Miss Jan. 9, 2013) (citing McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007)). The Court is unable to determine as a matter of law that a refusal to add an employee back to the active work schedule does not constitute an adverse employment action.

according to Curry, informed him that because he had filed a charge with the EEOC he would not be eligible for any work scheduling.

Thus, Curry contends that he has direct evidence that he was wrongfully retaliated against for filing a charge. Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact. Jones v. Overnite Transportation Co., 212 F. App'x. 268, 272 (5th Cir. 2006) (citing Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002)). It includes "statements or documents which show on [their] face that an improper criterion served as a basis . . . for the adverse employment action." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003). Those statements, however, must be direct and unambiguous. Read v. BT Alex Brown Inc., 72 F. App'x 112, 119 (5th Cir. 2003).

Where a plaintiff offers verbal remarks as direct evidence, however, the court must apply the four part test of CSC Logic to determine whether they are sufficient to overcome summary judgment. Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir. 2012). Thus, such remarks may constitute direct evidence if they are 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996); Patel v. Midland Memorial Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002) (quoting Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222-23 (5th Cir. 2001)); see also Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000), cert. denied, 532 U.S. 937, 121 S. Ct. 1393, 149 L. Ed. 2d 316 (2001). If the comments fail to meet these criteria, e.g., if they are vague and remote in time, or the speaker has no authority or influence over the employment decisions, they are merely "stray remarks." See, e.g., Krystek v. Univ. of So. Miss.,

164 F.3d 251, 256 (5th Cir. 1999); see also Brauninger v. Motes, 260 F. App'x 634, 640 (5th Cir. 2007) (noting that to be evidence of animus, a remark must be related to and proximate to a specific employment decision and the remark must be "direct and unambiguous.").

In the case at hand, the Court finds that the remarks at issue are direct evidence of discrimination. Accepting Curry's allegations as true, Sueing informed Plaintiff, "Well, I've just got to tell you, now that you have filed a complaint, it makes—we cannot employ you at this moment because—because you have filed a litigation." When asked for clarification, she allegedly confirmed that he could not continue to work for Hollywood because he had filed an EEOC complaint. The alleged statements were directed at Curry based on his exercise of a protected right, were proximate in time to the alleged contemporaneous refusal to grant Curry any work hours, were made by the pertinent decision maker, and were related to whether he would be granted additional hours. If believed by a trier of fact, Sueing's alleged comments would prove intentional discrimination without inference.

In the event that a plaintiff successfully produces direct evidence of discrimination, he may "bypass the McDonnell Douglas burden-shifting framework [so] commonly applied in discrimination cases and proceed [immediately] to the question of liability." Moore v. United States Dep't of Agric., 55 F.3d 991, 995 (5th Cir. 1995); Fierros v. Texas Dep't of Health, 274 F.3d 187, 192 (5th Cir. 2001); Stone v. Parish of East Baton Rouge, 329 F. App'x 542, 546 (5th Cir. 2009). "The burden of proof [then] shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" Fierros, 274 F.3d at 192 (quoting Brown v. East Miss. Elec. Power Assoc., 989 F.2d 858, 861 (5th Cir. 1993)). If the employer fails to carry this burden, plaintiff prevails. Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004).

9

Thus, Curry's proffered direct evidence allows him to bypass the McDonnell Douglas burden shifting framework and proceed immediately to the question of liability. In an attempt to avoid liability, Hollywood contends that they would have made the decision to not schedule Curry regardless of the filing of the EEOC complaint. In support of such a theory, Hollywood has offered evidence that Curry had been suspected of and investigated for theft in April of 2010, and management had made the decision not to allow him hours on such grounds alone. While Defendant has certainly produced evidence from which a jury may conclude that Hollywood would have made the same scheduling decision in spite of the existence of the alleged discriminatory animus, the Court may not weigh evidence, resolve, factual disputes, or make credibility choices at the summary judgment stage. See Fortenberry v. Gulf Coast Community Action Agency, Inc., 2007 U.S. Dist. LEXIS 89831, *7 (S.D. Miss. Dec. 5, 2007) (declining to grant summary judgment where defendant had proffered evidence supporting a legitimate non-discriminatory reason in face of plaintiff's direct evidence). There are therefore questions of material fact as to the failure to allow Plaintiff work hours.

*Formal Termination*

Finally, Plaintiff also attempts to rely on his formal termination to support his retaliation claim. Although Curry was removed from the Hollywood schedule in May 2010 and received no work hours thereafter, he was not officially terminated until several months later. According to Hollywood's personnel action form, Curry was not officially terminated until October 6, 2010. Hollywood disputes the characterization of this formal termination as an adverse employment action. Hollywood contends that the "one time" decision to remove Plaintiff was made earlier in May 2010, and the fact that the termination paperwork was not completed contemporaneously

"was simply an oversight that was corrected as the diner got closer to officially closing, and it does not reflect that any decision-making process took place after May 2010."

Hollywood, however, has provided no legal authority to suggest that the Court may overlook the formal termination on grounds that it was merely a formality. Additionally, this narrow view of the termination decision is not wholly supported by the factual record before the Court. Campbell, when asked whether Curry had been terminated upon his removal from the schedule, clearly stated that his termination had occurred later. Additionally, Sueing likewise stated that the decision to remove Curry from the schedule was made initially, and the termination actually occurred later. Although Campbell additionally testified that his view was that the casino owed no obligation to provide scheduling for part-time workers and termination was not therefore required, the Court is unable to overlook the fact that termination was a separate and discernible personnel action.

Hollywood additionally contends, however, that even if the Court were to construe the formal termination as a separate adverse employment action, Plaintiff's reliance is due to fail based upon the fact that any inference of a causal connection should be broken by Hollywood's finding of theft, which predated the EEOC charge. Again, in order to constitute direct evidence of a retaliatory act, the statement "must show on its face that an improper criterion served as a basis . . . for the adverse employment action." Fabela, 329 F.3d at 415. The statement must be direct and unambiguous and must not require an inference to be drawn. Read v. BT Alex Brown Inc., 72 F. App'x 112, 119 (5th Cir. 2003).

In the case at hand, the Court finds that the alleged remarks so too provide direct evidence in regard to Curry's formal termination. Sueing allegedly stated, "Well, I've just got to tell you, now that you have filed a complaint, it makes—we cannot employ you at this

moment because—because you have filed a litigation." When asked for clarification, she allegedly confirmed that he could not continue to work for Hollywood because he had filed an EEOC complaint. The alleged statements were directed at Curry based on his exercise of a protected right, were made approximately three months before the formal termination, were made by the pertinent decision maker, and were related to whether he would remain employed with Hollywood.[4] If believed by a trier of fact, Sueing's alleged comments would prove intentional discrimination without inference.

Thus, similar to the previously proffered employment action, the fact that Defendant has provided a legitimate, non-discriminatory reason as to why Curry was actually terminated is simply insufficient to support summary judgment. Curry has provided direct evidence that, if believed by the trier of fact, shows that he was retaliated against based on his exercise of a protected right. Finding, in the face of that proffered evidence, that Hollywood instead terminated Curry based on the surveillance report would require the Court to weigh the evidence and judge credibility. Summary judgment is therefore inappropriate.

### *Punitive Damages*

In the alternative, Defendants have also moved the Court for summary judgment as to Plaintiff's claim for punitive damages. Punitive damages are recoverable if the plaintiff shows that the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Smith v. Xerox Corp., 602 F.3d 320, 334 (5th Cir. 2010) (citing 42 U.S.C. § 1981a(b)(1)). This standard is higher than the showing necessary for

---

[4] When determining whether a causal connection exists based on temporal proximity alone, a three to four month gap might be too remote. See, e.g., Raggs, 278 F.3d at 471-72. However, when determining whether a definite and particularized statement is sufficiently proximate to constitute direct evidence, the court has found those statements are rendered circumstantial evidence only when the temporal gap has been more significant. See Brown, 82 F.3d at 656 (finding vague comments not directed toward plaintiff and made sixteen months prior were insufficient); Guthrie v. Tifco Insdus., 941 F. 2d 374, 379 (5th Cir. 1991) (finding vague comments with the most recent occurring one year prior to be too indefinite).

12

compensatory damages. Kolstad v. Am. Dental Ass'n., 527 U.S. 526, 534, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999). Further, "not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference." Hardin v. Caterpillar, Inc., 227 F.3d 268, 270 (5th Cir. 2000). Nevertheless, a plaintiff need not show the defendant's conduct was especially egregious, as "[t]he availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct." EEOC v. E.I. Du Pont de Nemours & Co., 480 F.3d 724, 732 (5th Cir. 2007). This is a subjective inquiry and focuses on whether the employer "at least discriminate[d] in the face of a perceived risk that its actions will violate federal law." Kolstad, 527 U.S. at 536.

Plaintiff has alleged that Defendant specifically informed him that he would not be able to work at Hollywood in the future due to the fact that Plaintiff had filed an EEOC complaint. The Court is unable to say at this juncture that there is no genuine dispute of material fact as to whether Sueing "at least discriminate[d] in the face of a perceived risk that [her] actions [would] violate federal law." Id. The Court therefore determines that Defendant's motion for summary judgment as to Plaintiff's claim for punitive damages should also be denied.

## CONCLUSION

Although the Court has determined that Plaintiff's retaliation claim is due to fail insofar as it is premised on Curry's May 12, 2010 removal from the work schedule, the Court nonetheless finds that Plaintiff has presented direct evidence that, if believed, provides proof that Hollywood's decision to not add Plaintiff back to the work schedule and the decision to ultimately terminate Plaintiff were retaliatory. Further, the Court determines that there remains a genuine dispute of material fact as to whether Defendant acted with the necessary malice or

reckless indifference to justify the imposition of punitive damages. The Court therefore GRANTS, in part, and DENIES, in part, Defendant's Motion for Summary Judgment.

SO ORDERED, this the 28th day of March, 2013.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**